## LUCY F. WYMAN, ADMINISTRATRIX, ETC., OF WILLIAM A. WYMAN, DECEASED, PLAINTIFF, v. THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, DEFENDANT.

*In what cases a company is required to give the notice prescribed by chapter 341 of 1876 before forfeiting a policy for non-payment of a premium — when a revival of a forfeited policy will be held to be a "renewal" thereof under the said act.*

Upon the trial of this action brought by the plaintiff, as the administratrix of her deceased husband, William A. Wyman, to recover the sum of $3,000, for which amount his life had been insured by a policy issued by the defendant on October 25, 1872, the complaint was dismissed upon the ground that prior to the death of the husband, which occurred on November 8, 1884, the policy had, by virtue of the terms and conditions contained therein, become null and void because of a failure to pay the annual premium which became due on the policy on October 25, 1884. Upon the trial it appeared from the testimony of the defendant's agent that Wyman had also made a default in the payment of a quarterly installment of a premium which became due on April 25, 1884, the payment of which on that day was, by the terms of the policy, essential to its validity; that before this payment became due he had, upon being requested by Wyman to extend the time for its payment, told him that he had no power to do so, but promised to hold the renewal in the office for four or five weeks, and said that if Wyman then came in and was in good health he had no doubt the company would accept the premium. Thereafter the assured came and paid the agent the premium, which was forwarded to and accepted by the company.

*Held,* that by accepting the premium falling due in April, after the day on which it was payable, the company revived and reinstated the policy from the time the payment was made.

That the policy was thereby "renewed," within the meaning of that term as used in section 1 of chapter 341 of 1876, providing that no life insurance company doing business in this State should have power to declare forfeited or lapsed any policy hereafter issued or renewed, by reason of non-payment of any annual premium or interest, or any portion thereof, unless the notice thereby prescribed should be given.

That as the notice required by this act was not given upon the failure of the assured to pay the premium falling due in October, the company could not declare the policy forfeited for his default.

MOTION by the plaintiff for a new trial on exceptions ordered to be first heard at the General Term.

*Samuel Greenbaum*, for the plaintiff.

*Philip G. Bartlett*, for the defendant.

Daniels, J.:

The plaintiff, as the administratrix of the estate of her deceased husband, William A. Wyman, prosecuted this action to recover the amount of $3,000, for which his life had been insured by a policy issued by the defendant on the 25th of October, 1872. This policy provided for the payment of an annual premium of $123.60 on or before the twenty-fifth of October in every year during its continuance. It was also declared and agreed in the policy that it should be null and void in case any note given for the cash part of the premium on the policy should not be paid at maturity, or in case the interest should not be paid annually in advance on any note which might be given for any portion of the premiums; and further, that if the said premiums shall not be paid at the office of the company in the city of Hartford, Conn., or to an agent of the company on his producing a receipt signed by the president or secretary, on or before the date above mentioned, then in every such case the said company shall not be liable for payment of the sum insured, or any part thereof, and this policy shall cease and determine.

The annual premium which became due on the policy on the 25th of October, 1884, was not, at that time, paid, and because of that failure to pay, the policy, by its own terms, was declared forfeited. Policies of this general form have frequently been before the courts for consideration and construction, and where no other circumstance has intervened to relieve the assured, the courts have held the policy to become void on account of such a default. (*Wheeler* v. *Connecticut Mutual Life Ins. Co.*, 82 N. Y., 543, 551; *Attorney General* v. *Continental Ins. Co.*, 93 N. Y., 70, 73; *Robertson* v. *Metropolitan Ins Co.*, 88 N. Y., 541.) There can be no room for doubt, therefore, that this policy had become null and void, unless it was saved by the intervention of the statute hereafter referred to, from and after the 25th of October, 1884, by the failure to pay the annual premium, and it was not revived or continued in force by the circumstance alone which was proved in the case, that the son of the assured paid the premium on the 10th of November, 1884, as long as the fact was that his father had died

on the eighth, and that was unknown to the agent of the company to whom the payment was made. (*Bennecke* v. *Ins. Co.* 105 U. S., 355.

On the 3d of November, 1884, an interview took place at the office of the agency of the company in the city of New York, between the assured and the agent concerning his right to a paid up policy. They did not agree as to this policy, on account of a difference between them relating to subsequent payments of interest upon the notes held by the company against the assured, and the agent then signed a stipulation extending the time for thirty days in which the assured might reach a conclusion regarding the taking of a paid up policy. That was at no time determined by the assured up to the period of his decease. This agreement was not made for the purpose, neither did it of itself have the effect of continuing the original policy in force. Its sole object was to allow the assured thirty days for investigation and consideration upon the question whether he would, or would not accept the paid up policy which the company was willing to issue to him. As to his immediately preceding default in the payment of the premium, no negotiations or agreement were entered into. Neither was the agent himself authorized to give him any indulgence on this subject. What then took place, therefore, in no manner aided or assisted the plaintiff in maintaining this action. As the law stood, before the statute presently considered was enacted, this policy would be avoided by the default in the payment of this premium. But it was proven by the cross-examination of the agent of the company by the defendant's counsel, that Wyman had also made default in the payment of a premium which was due on the 25th of April, 1884. What this premium was has not been very clearly disclosed by the case. But it is to be inferred from the receipt given on the tenth of November and dated the 25th of October, 1884, that it was a quarterly installment of the premium payable upon the policy, and that its payment was essential, as well as the payment of the entire annual premium, to keep the policy in life. Before this part of the premium was due, the agents states that the assured requested him to extend the time of the payment of his premium, but he refused to do so, and said " if I was ever so willing I have no power to extend the time of your payment, but I will hold your *renewal* in the

office, I will not return it to the company for four or five weeks, and if you come in and are in good health, I have no doubt we shall accept the premium, but I cannot extend the time. I have no power to and no desire to." The same witness further testified that he did after April take the money, after it was due ; that the assured came and paid it himself.

The failure of the assured to pay this premium at the time had the effect, under these provisions of the policy, to forfeit it as the statute referred to did not then apply to it, and the agent himself had no right to revive it without the action of the superior officers of the company. To restrain his authority in this respect, a notice appears to have been printed upon the policy to the effect that the insured will please take notice that no receipt for premium on this policy is valid unless signed by the president or secretary of this company at Hartford, Conn., and that no agent has authority to receive any premium without first presenting a regularly signed receipt from the president or secretary, or to interline, alter or otherwise change any policy, or to receive any premium after date of its being due without special permission from the officers of the company. But it is, nevertheless, to be inferred from the circumstances that the policy was afterwards reinstated and up to the 25th of April, 1884, regarded as and was an insurance in force and effect, because of this April premium having been accepted by the company, and the policy in that manner in due form renewed from the time when the payment was made. That the object of the payment was to avoid the forfeiture and secure a renewal of the policy, is disclosed by the evidence of the agent which has already been cited. The forfeiture for this April default which was in this manner encountered, was superseded and the policy renewed by the subsequent payment of this April premium, and its transmission to and acceptance by the company, which acceptance is to be inferred from the other facts in the case and the result of this renewal was, after that, to place this policy within the control of chapter 341 of the Laws of 1876, and to render it afterwards incapable of forfeiture without the service of a notice of not less than thirty days to the insured, stating the amount of the annual premium, or interest due, and when due on such policy, and the place where such premium or interest might be paid. That such a

notice was served was neither intimated nor proved upon the trial. And while this policy was issued, before the enactment of the statute, as long as it was renewed after such enactment, it was brought within its provisions.    For it has been made to include not only policies issued after the enactment, but also those which may afterwards be renewed, and this policy, from the evidence, was so renewed.    If this term is not to have this effect, then it can manifestly have no application to renewed policies intended to be protected by the statute.    And that construction would be opposed not only to its spirit, but also to its language.    There was no legislative inability to include within the act such policies as should be renewed and continued in force after its passage.    For, while not in form, a new policy after the insurance had become null and void, because of the non-payment of the premium and the renewal of it by the acceptance of the money yet in legal effect the policy would be otherwise, and it must have been so intended by the legislature in making the act applicable to a renewed policy.    A prominent purpose which this phraseology must subserve, in the statute, is to include that class of policies that may have become forfeited and void, and are afterwards revived and continued by the action and assent of the company.    They are, then, not only in the language of the statute, but also by the popular understanding of the terms, renewed policies of insurance, and by force of the statute incapable of subsequent forfeiture or anullment without the service of the notice prescribed in it.    And the practice also of the company to be inferred from the testimony of the agent is to renew the policy in form, when the premium maturing upon it shall be paid and received.    It has not been required by the act that the entire annual premium shall be defaulted to bring the policy within the provisions of the law relative to notice, but it is sufficient that the case shall be one of "non-payment of any annual premium, or interest, or any portion thereof," to entitle the assured to this notice before the renewed policy may be avoided.    The default of the assured in April, 1884, was of some portion of the annual premium. That, under the provisions of the policy, worked a forfeiture when the assured failed to pay the amount.    It, for all practical as well as legal purposes, then ended the insurance, and as this part of the premium was afterwards accepted and undoubtedly received by the

company, the policy was thereby from that time renewed and rendered subsequently non-forfeitable without the service of this notice.

The objection that the act does not include this insurance company is not tenable, for it has been made to include all life insurance companies doing business in this State, and this policy was issued in this State, and the company had and maintained an agency here, which brought it within the authority and control of the act.

The verdict should be set aside and a new trial ordered, with costs to abide the event.

Van Brunt, P. J., and Brady, J., concurred.

Verdict set aside, new trial ordered, costs to abide event.