CONTINENTAL INSURANCE COMPANY v. O. S. CUMMINGS ET AL.

No. 1335.   Decided June 23, 1904.

**1.—Insurance—Warranty—Ownership—Waiver.**

The warranty in a policy that insured is the sole owner of the property is waived by the insurer when his agent drawing the policy makes it pay-able to such insured with knowledge that the property was owned by a company in which he was only part owner.   (P. 120.)

**2.—Knowledge—Evidence—Notoriety.**

To prove that an insurance agent had knowledge as to who were the members of a firm whose property he insured in the name of one of them only, evidence that such fact was commonly known in the town where the agent lived was admissible, in connection with other circumstances tending to show knowledge.   (Pp. 120, 121.)

**3.—Evidence—Declarations—Agent.**

Declarations of an insurance agent, after issuing the policy, are not ad-missible against his principal unless the agent was charged with the per-formance of some duty with reference to the policies at the time such de-clarations were made.   (P. 121.)

**4.—Insurance—Inventory—Waiver of Production.**

The waiver by an insurance adjuster of the production of an inventory required by the policy to be kept and produced was not binding where made in ignorance of the fact that such inventory had been destroyed by the fire. (P. 121.)

**5.—Construction of Insurance Policy—Inventories.**

Policy of insurance construed and held to require the production by the insured not only of the inventory taken, as required by the policy, after its isuance, but of the last preceding inventory.   (Pp. 121, 122.)

Error to the Court of Civil Appeals for the First District, in an Appeal from Brazoria County.

Cummings sued the insurance company upon a fire insurance policy, and the Alvin Exchange Bank intervened as the real plaintiff in inter-est, and had judgment.   The insurance company appealed, and, on affirmance, obtained writ of error.

*Alexander & Thompson* and *Elmer P. Stockwell,* for plaintiff in error.—The court erred in admitting in evidence and in considering as

the basis for its judgment, proof of general opinion in the town of Alvin of the ownership of the property described in the policy of insurance sued on; and erred in holding that such general opinion could be the basis of an estoppel as against defendant of the assertion of its defense of want of sole and unconditional ownership in the assured of the property described in the policy; and erred in rendering judgment in favor of plaintiff and interveners and against defendant when the assured in the policy named was not the sole and unconditional owner of the property described in the policy. ·

A want of sole and unconditional ownership prevented any right of recovery in the assured. Fire Assn. v. Calhoun, 67 S. W. Rep., 153; Simonds v. Firemen's Fund, 35 S. W. Rep., 300; Crescent v. Camp, 71 Texas, 503.

Where illegal evidence is admitted over objection, and there is no legal testimony sustaining an issue in the case, the case should be treated as if the testimony was not introduced, and a judgment based thereon should not be sustained. Wells, Fargo & Co. v. Waites, 1 Texas Civ. App., 480; Insurance Co. v. Blum, 76 Texas, 653; Joske v. Irvine, 91 Texas, 582; Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 82, 88; Lee v. International & G. N. Ry. Co., 89 Texas, 588, 90 Texas, 88, and cases cited, supra.

Evidence of general reputation of the existence of facts in a locality is never legally admissible for the purpose of controlling express contractual stipulations, either by estoppel or otherwise. 2 Am. and Eng. Enc. of Law, 424 et seq.; Railway Co. v. Owens, 1 White & W. C. C., 389.

To operate as a waiver of a written stipulation in an insurance contract, the matter alleged as waiver must amount either to a new contract, that is an agreement based upon a valuable consideration, or the facts alleged must in equity create an estoppel, or there must be a voluntary relinquishment of a known right, and unless one of these does exist under the facts the issue of waiver is not raised. Merchants Insurance Co. v. Lacroix, 45 Texas, 159, 170; Sun Mut. Insurance Co. v. Machine Co., 15 S. W. Rep., 35.

The admission of immaterial and irrelevant evidence over the objection of defendant will preclude the consideration of said evidence in the formation of the judgment, and where the judgment is unsupported except for such illegal testimony it can not be sustained. Moore v. Kennedy, 81 Texas, 147; Wagoner v. Ruply, 69 Texas, 705, 706; Wells Fargo v. Waites, and cases supra; German Am. Insurance Co. v. Walters, 10 Texas Civ. App., 366; Insurance Co. v. Moriarity, 36 S. W. Rep., 943.

The court erred in rendering judgment against defendant and in favor of the plaintiff, when there had been a failure on the part of the assured to comply with the requirements of the iron safe clause. Western Assurance Co. v. Kemendo, 94 Texas, 373; Fire Association v. Calhoun, 67 S. W. Rep., 153; Fire Association v. Masterson, 2 Texas Civ.

App., 278; Delaware v. Monger, 7 Texas Ct. Rep., 241; Roberts v. Sun Mutual Insurance Co., 19 Texas Civ. App., 344; Sun Mutual Insurance Co. v. Tufts, 50 S. W. Rep., 180.

There was not sufficient evidence of waiver before the court upon which to predicate a judgment in plaintiff's favor on this defense.

*H. Grass* and *Bryan, Tod & McRae,* for defendants in error.—There being a conflict in the evidence between Kimmins, the assured, and Stockwell, the general agent of defendant, as to whether Stockwell knew of the true condition of the ownership of the property insured at the time that he delivered the policy of insurance sued upon, the court properly admitted evidence of persons living in the village of Alvin to testify that it was a matter of common knowledge that W. R. Kimmins and J. R. Kimmins composed the firm of Kimmins Hardware Company, it being received by the court as corroborative of the evidence of J. R. Kimmins that Stockwell did know the facts, and not for the purpose of proving the fact itself. From the fact that who composed the firm was a matter of common knowledge, the other fact could be inferred. Berry v. House, 1 Texas Civ. App., 564; 1 White & Willson, C. C., sec. 963; 1 Greenl. on Evi., 15 ed., sec. 101, and note bottom p. 147; Abbott trial Ev., 210, note 3.

The defendant having delivered the policy to the assured, knowing at the time of the delivery that J. R. Kimmins was not the sole and unconditional owner of the property, and knowing that the property insured belonged to the Kimmins Hardware Company, composed of J. R. Kimmins and W. R. Kimmins, and having received the premium therefor from the Kimmins Hardware Company, is now estopped to assert the invalidity of the policy by reason of the lack of sole and unconditional ownership. Liverpool and London and Globe Insurance Co. v. Ende, 65 Texas, 123; Wagner v. Westchester Insurance Co., 92 Texas, 549; Hartford Insurance Co. v. Post, 2 Texas Civ. App., 42.

The finding of fact by the court that the books of the assured were kept as required by the policies, and that any further or other proofs of loss which might have been required were waived by plaintiff in error's agent, Jalonick, is amply supported by the evidence, and is conclusive against plaintiff in error on this issue. (1) That the iron safe clause was substantially complied with: Brown v. Palatine Insurance Co., 89 Texas, 590; Western Insurance Co. v. Kemendo, 94 Texas, 367; Penn Insurance Co. v. Brown (three cases), 36 S. W. Rep., 590 et seq.; Standard Insurance Co. v. Willock, 29 S. W. Rep., 218. (2) That plaintiff in error waived the right to any further production of proofs of loss: Northern Insurance Co. v. Samuels, 11 Texas Civ. App., 422; Merchants Insurance Co. v. Reichman, 40 S. W. Rep., 831; Scottish U. Insurance Co. v. Clancy, 83 Texas, 116; Commercial Insurance Co. v. Meyer, 9 Texas Civ. App., 17.

We respectfully submit that if the Supreme Court is to be bound by the findings of fact by the Court of Civil Appeals and of the District

Court, it would be difficult to find a stronger case in which the facts more clearly showed a waiver by the insurance company of the production of the books and inventory by the insured, and, as we understand the law of this State to be, upon this alone the defendants in error would be entitle to an affirmance of the judgment of the lower courts. German Insurance Co. v. Norris, 11 Texas Civ. App., 252; Northern Insurance Co. v. Samuels, 11 Texas Civ. App., 422; American Insurance Co. v. Center, 33 S. W. Rep., 555; Merchants Insurance Co. v. Reichman, 40 S. W. Rep., 831; Commercial Insurance Co. v. Meyer, 9 Texas Civ. App., 17; Georgia Insurance Co. v. Moriarty, 37 S. W. Rep., 631; Georgia Insurance Co. v. O'Neal, 14 Texas Civ. App., 519; Phoenix Insurance Co. v. Munger, 49 S. W. Rep., 271; German Am. Insurance Co. v. Evans, 61 S. W. Rep., 536; Couch & Gilliland v. Home Insurance Co., 73 S. W. Rep., 1077.

BROWN, ASSOCIATE JUSTICE.—O. S. Cummings, as assignee of the policies brought this suit against the Continental Insurance Company to recover on three policies of insurance against fire issued by the de-defendant company to J. R. Kimmins upon his stock of hardware and other goods, store fixtures, and storehouse situated in the town of Alvin. The first policy was issued on the 7th day of December, 1901, for a sum not exceeding $900; on the stock of merchandise $600; on the building $200, and on the fixtures $100. On the 14th of December, 1901, the company issued to the said Kimmins another policy for $400 on the same stock of goods, and on the 15th day of February the company issued a third policy to the said Kimmins for $500 on the merchandise in the store. Each of the policies was payable to J. R. Kimmins as the sole owner of the property. All of the policies were alike in their terms except as to amounts; each insured against fire for one year from date. On the 6th day of August, 1902, all of the property embraced in the policies was destroyed by fire. The petition alleged that the property insured was in fact owned by the Kimmins Hardware Company, a corporation composed of J. R. and H. R. Kimmins, and that the true ownership of the property was known to W. R. Stockwell, the agent who issued the policies, at the time they were issued; that as agent of the company Stockwell was empowered to issue the policies, and, notwithstanding his knowledge of the fact to the contrary, wrote into said policies that J. R. Kimmins was the sole owner of the property. The petition contained all of the allegations necessary for recovery, which it is not necessary for us to set out in this connection.

The original petition also alleges in substance that J. R. Kimmins gave notice of the destruction of the property by fire on the next day after it occurred to W. R. Stockwell, the agent of the defendant company, who issued the policies sued upon. Afterwards, on the 25th day of August, 1902, I. Jalonick, who was the agent of the defendant company and its adjuster of losses with full power to ascertain the amount of the loss and the liability of the company, "came to the town of Alvin

where the said loss had occurred, and the said Kimmins on to wit, the 25th day of August, 1902, furnished to said agent of defendant a full statement concerning said loss, stating the knowledge and belief of the insured as to the time and origin of the fire, and the said Kimmins offered to produce his books for the inspection of said adjuster and to do or perform any other acts or things which were required by the terms of the said policies to be done by said insured; and the said agent of defendant stated to and advised the insured that he was satisfied as to the evidence and statements of loss that had occurred and that the insured need take no further steps or make any further effort to make proofs of loss, or do anything else to establish their claim against the defendant, and admitted that the company was liable to the said insured for the loss, and thereafter, on or about September 15, 1902, offered for the defendant to pay 50 per cent of the face of said policies in full satisfaction of said loss by reason of said fire, which offer of 50 per cent was refused by the insured and plaintiff, and payment in full demanded of defendant by them."

Among other pleadings the defendant filed a special answer in which it set up the following clause of the policy: "This entire policy shall be void if the interest of the insured in the property be not truly stated herein; and this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, if the interest of the insured be other than unconditional and sole ownership." The answer alleged that at the time the policies were issued the property belonged to the Kimmins Hardware Company, of which H. R. Kimmins was a member, and that J. R. Kimmins was not the sole owner but was the owner of only half interest in it; therefore, claimed the forfeiture of the policy on account of the breach of that clause. The answer also set up the following clauses of the policy:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building, and unless such books and inventories are produced and delivered to this company for

examination, this policy shall be null and void, and no suit or action shall be maintained hereon; it is further agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under the policy, nor a waiver of any defense to the same."

The defendant alleged that J. R. Kimmins had failed to comply with the requirements of the said policies in the fact that he failed to take the inventory required therein, and also that he failed to keep a set of books such as was required by the terms of the said policies, and that said J. R. Kimmins failed to keep his last inventory and the preceding inventory as required by the terms of the said policies, and to produce the same at the request of the defendant, and failed to keep a set of books as required, which inventory and books were destroyed by the fire, claiming that the policy was thereby rendered null and void.

In a supplemental petition the plaintiff reasserted that W. R. Stockwell was the duly authorized agent of the defendant, who issued the policies of insurance sued on, and alleged that the said Stockwell lived in the town of Alvin, where the said Kimmins Hardware Company conducted its business, and well knew all the facts, conditions and circumstances concerning the true ownership of the property, detailing the facts and circumstances which it was claimed put the defendant company upon notice of the true ownership of the property. Said supplemental petition also alleged that the plaintiffs were suing for the benefit of the Alvin Exchange Bank, to which the policies of right belonged. The bank intervened, claiming the policies. A trial was had before the judge, who gave judgment for the bank, which was affirmed by the Court of Civil Appeals.

The trial court and the Court of Civil Appeals each found that at the time Stockwell issued the policies sued upon he knew that the property embraced in them belonged to the Kimmins Hardware Company, and that the firm was composed of J. R. Kimmins and H. R. Kimmins. Assuming the correctness of the finding of the court on that issue of fact, it can not be doubted that the knowledge of the agent operated as a waiver of the clause of warranty of sole ownership by J. R. Kimmins. Wagner v. Westchester Ins. Co., 92 Texas, 549. As we must reverse and remand this case upon another point, we think it proper to notice some questions presented by the plaintiff in error as to the admissibility of evidence offered to prove that Stockwell knew the true ownership of the property when he issued the policies.

The plaintiff in error assigns here that the trial court erred in admitting the testimony of various witnesses to the effect that it was commonly known among the people of Alvin that the Kimmins Hardware Company was composed of J. R. Kimmins and H. R. Kimmins. In order to avoid the forfeiture of the policies, it devolved upon the plaintiff to prove that at the time they were issued Stockwell knew that the property insured belonged to the Kimmins Hardware Company, and that the firm was composed of J. R. Kimmins and H. R. Kimmins.

Biddle on Insurance, sec. 1053.   But the fact of knowledge may be proved by circumstances; and the evidence was admissible as a circumstance, taken in connection with other facts and circumstances, to prove the knowledge of Stockwell.   The insurance company was not charged with the duty of inquiring into the title to the insured property, and the fact that its agent could have learned the truth by inquiry will not affect the warranty of title.   Aetna Ins. Co. v. Holcomb, 89 Texas, 404. General reputation as to the business relations between J. R. Kimmins and H. R. Kimmins is not sufficient of itself to avoid the policy, and can only be used as evidence to prove the fact of knowledge which must be established to avoid the effect of the warranty.   Missouri P. Ry. Co. v. Owens, 1 White & W., sec. 389.

It is also objected that the court erred by admitting the declarations of Stockwell to J. R. Kimmins to the effect that the insurance company desired the policies changed by inserting the Kimmins Hardware Company instead of J. R. Kimmins as the owner of the property.   From what we can learn from the record the issuing of the policies terminated Stockwell's connection with them and his declarations made thereafter should not be admitted against the company, unless the testimony shall show that at the time the declarations were made he was charged with the performance of some duty in connection with those policies.   Missouri P. Ry. Co. v. Owens, 1 White & W., sec. 390.

It is admitted in plaintiff's petition that the inventory of the stock taken in January, 1901, was destroyed by the fire, therefore not produced to the adjuster of the insurance company.   If that inventory was required by the terms of the iron safe clause of the policies to be kept and produced after the fire, then the first two policies are void, unless it be proved that at the time Jalonick waived the production of the inventories he knew of the destruction of that one taken in 1901. 2 Biddle on Insurance, sec. 1053; Aetna Ins. Co. v. Holcomb, 89 Texas, 404; Reynolds v. Mutual F. Ins. Co., 34 Md., 280; Robertson v. Metropolitan L. Ins. Co., 88 N. Y., 541; Miller v. Union C. L. Ins. Co., 110 Ill., 102.

The trial court made the following finding of fact:   "I find as a fact that defendant through its agent, Jalonick, waived any further or other proofs of loss and waived the production of the books and inventories at the time of the visit to Alvin on August 25, 1902."   This finding does not establish that at the time the waiver was made by Jalonick he knew the inventory in question had been destroyed, and no evidence has been pointed out to establish the fact that Jalonick had such knowledge.

The remaining question is, did the warranty in the iron safe clause of the policies require the production of the inventory taken in January, 1901.   This language of the iron safe clause prescribes the requirements of the policies on this point:   "Section 1.   The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in

detail within thirty days of the issuance of this policy." * * * Section 2. That the assured will keep a set of books showing the sales, etc., "from the date of the inventory as provided for in first section of this clause, and also from date of the last preceding inventory, if such has been taken." * * * "Section 3. The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, * * * and unless such books and inventories are produced and delivered to this company for examination, this policy shall be null and void, and no suit or action shall be maintained hereon." The inventory taken in January, 1902, was produced as required by the terms of the policies, and if the policies required the production of but one inventory, then their requirements are satisfied. The inventories which are required to be preserved and produced are described as "such books and inventory" and "the last preceding inventory," etc., which refers to those mentioned in the second section of this clause, which in turn describes them as "the inventory provided for in the first section of this clause" and "the last preceding inventory." The first section of the iron safe clause provides for an inventory to be taken after the issuance of the policies, which was done in January, 1902. The inventory of 1902 was called for in section 1 of the iron safe clause and that of 1901 was the last preceding inventory, therefore the assured was required by the third section to preserve and produce to the insurer both of those inventories; and unless the testimony shall show that the agent of the insurance company, knowing of the loss of the inventory of 1901, waived its production, the two policies issued in December must be held void as to the stock of goods, but not as to the building nor as to the fixtures, because it is not required that an inventory should be taken of anything except "the stock on hand," which we construe to mean the stock of goods on hand and not the fixtures in the store or the building itself. No inventory of the stock having been taken after the policy was issued in February, the inventory taken in January, 1902, was as to that policy the last "preceding inventory," and its production satisfied the requirements of the iron safe clause in this regard.

It is ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and this cause be remanded to the District Court.

*Reversed and remanded.*