WESTERN NAT. BANK OF HEREFORD v. WALKER. (No. 1260.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 13, 1918.)

1. PARTNERSHIP ☞142(2) — MORTGAGE OF PARTNERSHIP PROPERTY TO SECURE PARTNER'S DEBT—KNOWLEDGE OF CREDITOR.

A partner cannot mortgage partnership property to secure his individual indebtedness, and such mortgage cannot be enforced as against the rights of the other partner, though the creditor did not know that such property belonged to the partnership, unless such partner is estopped to set up his rights.

2. PARTNERSHIP ☞218(3) — MORTGAGE OF PARTNERSHIP PROPERTY—WAIVER.

Where a bank has accepted a mortgage of partnership property to secure a partner's individual debt, a statement by his copartner to the bank that his failure to promptly notify it of his rights in the property deprived him of his right of action, did not require submission of the issue of waiver, in the absence of evidence of consideration or estoppel.

3. CORPORATIONS ☞123(11) — PLEDGE OF STOCK—OWNERSHIP—NOTICE.

Where bank had direct information from a third person that he claims an interest in shares of corporate stock taken by the bank as collat-

eral, the bank is bound by such notice, and takes the risk of third person's successful assertion of his claim.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Action by the Western National Bank of Hereford against J. I. Walker. Judgment for defendant, and plaintiff appeals. Affirmed in part and reversed in part.

Wm. M. Knight and Jno. P. Slaton, both of Hereford, for appellant.

Gilliland & Estes and Russell & Dameron, all of Hereford, for appellee.

BOYCE, J. The Western National Bank of Hereford brought this suit on a note executed by J. I. Walker, and to foreclose a lien given by him to secure its payment on certain live stock and shares of the capital stock in the J. I. Walker Hardware Company, a corporation. Appellee, Perkins, was made a party to the suit on allegation that he was asserting some claim to the property on which the lien was sought to be foreclosed, and the questions on this appeal arise on the issues between the bank and Perkins, presented by the claim of ownership of such property asserted by Perkins in his answer. The case was submitted to the jury on special issues, and it was found that the live stock described in the judgment as the Collins & Warren horses and mules were at the time of their mortgage to the bank the partnership property of J. I. Walker and J. J. Perkins, and that the 74 shares of corporate stock in the Walker Hardware Company were the property of J. J. Perkins. The court on this verdict entered judgment for Perkins for the recovery of said live stock and corporate shares. Such further statement as is necessary will be made in connection with the discussion of the particular assignments. Appellee has filed no brief, and we have accepted the statements made by appellant under these assignments, in accordance with Courts of Civil Appeals Rules Nos. 40 and 41 (142 S. W. xiv).

The first two assignments complain of the action of the court in refusing to submit an issue as to whether the appellee, Perkins, was estopped to deny that Walker was the owner of the live stock mortgaged by him to the bank. Estoppel was duly pleaded, and it appears from the evidence that Perkins knowingly permitted his partner, Walker, to handle this stock in such manner that it might appear to be the individual property of Walker; in fact, it seems that Perkins insisted that his name be not used in connection with the partnership business, and that the bank took its mortgage without any knowledge that the live stock was partnership property. These facts, if true, raise an issue of estoppel.

[1] It is correct, as a general proposition, to say that a partner cannot mortgage the partnership property to secure his individual indebtedness, and such mortgage cannot be enforced as against the rights of the other partner, though the creditor did not know that such property belonged to the partnership. Goode v. McCartney, 10 Tex. 193; Rogers v. Batchelor, 12 Pet. 221, 9 L. Ed. 1063. This general proposition must be limited, however, so as not to control in those cases where the principles of estoppel would be appropriately applicable. 30 Cyc. 501, 502; Locke v. Lewis, 124 Mass. 1, 26 Am. Rep. 631, 10 R. C. L. p. 777. A very careful and elaborate discussion of this question is to be found in the opinion of the Supreme Court of Massachusetts, in the case of Locke v. Lewis, supra, and the conclusion reached, in which we concur, that where one partner allows the other to deal with partnership property in such manner that it is apparently his own, and innocent third persons are thus induced to deal with reference thereto on this assumption, the principles of estoppel ought to apply. The instructions requested by appellant, referred to in these assignments, we believe are erroneous, in that they ignore any reference to any conduct or acts of Perkins as being necessary in the consideration of the question of estoppel, making it depend wholly on the actions and conduct of the defendant, Walker. In connection with the conclusions announced by the court in the case of Locke v. Lewis, supra, this statement is made:

"We would not be understood to affirm that the mere belief of the separate creditor that the property which he received does not belong to the partnership will of itself be sufficient to entitle him to hold it, if there has been nothing in the acts or conduct of the other partners to induce the belief that the partners with whom he dealt were the sole owners."

The charge as requested, though erroneous on account of ignoring this phase of the question of estoppel, was sufficient to require the submission of the issue on correct instructions, since it was raised by the pleading and evidence and nowhere presented in the charge.

[2] By the third and fourth assignments complaint is made of the refusal of the court to submit to the jury an issue requiring it to find whether defendant, Perkins, had waived his right to assert a claim of ownership to the live stock and corporate stock in question. The evidence relied on to support appellant's contention that the issue of waiver was in the case consists of statements made by Perkins in a letter written to the bank long after the execution of the mortgages. In this letter Perkins expressly refused to give a formal waiver of any claims he might have, but added:

"I would not expect to assert any claim to any of this stuff which Walker has put up with you by mortgage or otherwise, but I feel that my failure to promptly notify you when I first found out that Walker had mortgaged the live stock which I had paid for would be an effectual bar against my recovering this property, but I am not seeking, directly or indirectly, to take any advantage whatever of your bank."

The particular letter in which this statement occurs appears to refer only to the live stock. It is not shown that any consideration was given for this alleged waiver, if it could be said to be one, or that it was so acted upon by the bank as that any principle of estoppel would apply. In the absence of such facts, no issue of waiver, based on this statement, arises. 40 Cyc. 263.

The 74 shares of corporate stock in the J. I. Walker Hardware Company, put up by Walker to secure the payment of this note, and in controversy here, were issued in the name of Walker and were in his possession. Before this stock was taken by the bank as security to Walker's indebtedness, the president of the bank had been informed by Perkins in person that the stock belonged to him. Walker, at the time he put the stock up, assured the president of the bank that he owned the stock, and undertook, by reference to various circumstances, to prove that Perkins' claim to the stock was unfounded.

[3] Under these circumstances, the appellant, by the fifth assignment, complains of the refusal of the court to charge the jury as follows:

"Although you may believe from the evidence that the plaintiff knew that the defendant, Perkins, claimed to own the seventy-four shares of stock in the Walker Hardware Company at the time it acquired it, yet if you further believe that the plaintiff made such investigations as a man of ordinary prudence would make in an effort to learn the truth of Perkins' claim, and that from such investigations it did not appear that Perkins was the real owner of such corporate stock, then you should answer special issue No. 2 in the negative" (this issue being that submitting the question of Perkins' ownership of said stock).

Under the facts stated, we do not see how there can be any question of "reasonable inquiry." Such inquiry, in cases of this kind, can only be to develop whether a certain person, suggested by facts in possession of the party proposing to acquire the property as having some claim against it, is really a claimant thereof. When the inquiry does develop that the claim exists, certainly the proposed purchaser could not make himself the judge and try the validity of the claim, and bind the claimant by his decision, however fairly made. Knowing of the claim asserted, he must take the risk of its successful assertion. There was no necessity for inquiry in this case; the bank had direct information of the claim from the best source of information—the claimant himself—and is bound by such notice. Pomeroy's Equity Jurisprudence (3d Ed.) §§ 594, 599, 607.

The judgment, we think, was erroneous in failing to foreclose the mortgage against whatever interest Walker, on final settlement of the partnership business, might be determined to have in the property mortgaged to appellant. Lee v. Wilkins, 65 Tex. 299; Thompson v. Tinnin, 25 Tex. Supp. 56; Rogers v. Nichols, 20 Tex. 719. We take it that the sale of this interest would be controlled by

the provisions of R. S. art. 3743. We make this statement in view of the fact that this issue is raised by proper assignment and in view of another trial in which the same question may arise.

The other assignments are controlled by what we have already said and are overruled without particular mention.

The judgment will be affirmed except in so far as it affects the rights of the parties to the live stock described in the judgment as the Collins & Warren horses and mules, and will be reversed in such respect, and remanded for a new trial of such issues.

Reversed in part.