SUPERIOR INSURANCE COMPANY, Appellant,

v.

W. E. KLING, Appellee.

No. 3599.

Court of Civil Appeals of Texas.
Waco.

Feb. 5, 1959.

Rehearing Denied March 5, 1959.

**152**

---

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for appellant.

Bradley & Geren, Groesbeck, for appellee.

McDONALD, Chief Justice.

Appellee, W. E. Kling, filed a claim for compensation with the Industrial Accident Board, for an injury resulting, among other things, in the loss of his left arm, received 16 September 1957 while employed by the C. J. Kling and M. A. Gunter Gin Company of Kosse, Texas. The Board awarded him $35 per week for 150 weeks, plus medical expense. The instant suit was filed by Superior Insurance Company, the compensation carrier for the Kling and Gunter Gin, as an appeal from the award of the Board. W. E. Kling thereafter filed cross claim against the Superior Insurance Company, in which he alleged a general injury and total and permanent disability. In this re-

gard Kling alleged that he was working at the gin when his left arm became caught in the gin saws; that his left arm was mangled, rendering amputation necessary; that he suffered injuries to his nerves, muscles, tendons, causing pain throughout his body and back, causing permanent total general disability. Kling further alleged that in August 1957 and prior to the accident, representatives of the Superior Insurance Company came to the Kling Estate & Gunter Gin, where he was working (as manager and sole full time employee) and solicited the workmen's compensation insurance covering the workers of the gin; that Kling explained to the Insurance Company's representatives that the gin belonged to the C. J. Kling Estate and M. A. Gunter Gin Company, a partnership, and that he was the gin manager and worked for the gin (for wages and a bonus); that he was a son of C. J. Kling, deceased, and he wanted to be covered by the insurance policy; that the company's representative Jarrett wrote out the application for the insurance and stated thereon in writing that there was to be coverage on W. E. Kling, manager, son of C. J. Kling; that the premium of $361.40 was paid based on total salary payroll of $6,000 of which $4,000 was allocated to W. E. Kling and $2,000 to the other workmen for the gin company; that the agents of the company stated that Kling was to be covered by the policy; that thereafter on 12 August 1957 the company issued the policy. Kling further alleged he relied on the representation of the Insurance Company and of the policy that he was covered thereunder. Kling pleads in the alternative that if the policy did not cover him in the course of his employment for the gin company, that the Insurance Company, in accepting the application which stated he was to have insurance coverage and issuing the policy and accepting the premium based on his earnings, is estopped to deny liability.

Pleading further in the alternative, Kling alleges the Insurance Company represented the policy would effect coverage on him, and accepted the premium based ⅚ on his annual wage, knowing he was the son of C. J. Kling, deceased, who had owned an interest in the gin; and thereby waived any right to deny him coverage.

Kling further plead in the alternative that the Insurance Company, in accepting a premium ⅚ of which was based on his wages and insuring him therefor, and agreeing to insure him therefor, made a contract of indemnity and a special insurance contract whereby they insured him at the same rate of recoverage as provided by the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq.

The Superior Insurance Company answered by general denial and by allegation that the gin company had originally been a partnership between C. J. Kling, father of W. E. Kling, and M. A. Gunter; that each owned a ½ interest in the gin; that C. J. Kling died intestate in 1955 and there has been no administration on his estate; that he left nine children, one of whom was W. E. Kling; that W. E. Kling was a $\frac{1}{18}$ owner of the gin; that W. E. Kling was a partner in the Gin Company with his eight brothers and sisters and Gunter; owning $\frac{1}{18}$ interest therein; and is precluded from recovering for his injury for such reason. The company further alleged that his injury was specific and not general. The Insurance Company did not tender back any part of the nearly $400 premium paid for the policy.

Kling filed a reply to the Insurance Company's pleading in which he alleged, among other things, that under the facts, for the company to deny liability after accepting the premium and having full knowledge of the facts, said company is guilty of a legal or actual fraud upon claimant; that in view of all of the facts, if such policy did not cover appellee the Insurance Company was guilty of negligence in failing to notify appellee that he did not have coverage; that since it was his understanding and agreement as well as the understanding and agreement of the Insurance Company's representatives, who had knowledge of all

the facts, that appellee was covered by the policy, if he was not covered it is because of a mutual mistake, and since the premium paid was for his coverage, the policy should be reformed to include coverage for appellee and appellee should be permitted recovery thereunder.

Trial was before the court without a jury, which, after hearing, rendered judgment in favor of Kling for total and permanent disability ($35 per week for 401 weeks) and medical expenses.

Superior Insurance Company appeals, contending:

1) The Trial Court erred in holding W. E. Kling to be an employee within the terms of the Workmen's Compensation Law in Texas, since the undisputed facts showed him to be a part owner and partner with an interest in the business.

2) The Trial Court erred in awarding W. E. Kling 401 weeks compensation for total and permanent disability when, under the record, his compensation and injury should have been limited to loss of the left arm below the elbow.

3) The award of total and permanent disability is not supported by sufficient evidence, and is against the great weight of the evidence.

We revert to the 1st contention of appellant Insurance Company—that since Kling was a part owner and partner with an interest in the gin business, he is precluded from recovery as an employee within the terms of the Compensation Law.

Appellant Insurance Company says in its brief:

"It is undisputed that C. J. Kling and M. A. Gunter Gin Company was originally a partnership between C. J. Kling, the father of appellee W. E. Kling, and M. A. Gunter, each owning ½ interest. C. J. Kling died intestate in 1955, and there was no administration on his estate. His only heirs were his nine children, one of whom is appellee. After the death of C. J. Kling, the gin continued to be operated by agreement of all the interested parties, with ⅓ of the net profits going to M. A. Gunter, ⅓ to W. E. Kling (for his wages), and the remaining ⅓ divided among the nine children of C. J. Kling, of which W. E. Kling, as one of the children and heirs also received his proportionate part."

"It is the position of appellant that W. E. Kling was thus a part owner and partner and an employer rather than an employee within the terms of the Workmen's Compensation Law of the State of Texas, and that therefore, as a matter of law, he was not entitled to recover workmen's compensation herein. Actually, W. E. Kling had a dual relationship to the gin and in the sense in which the words are used by the man in the street he would be said to be an employer in one capacity and an employee in another. However, the cases hold that under the Texas Workmen's Compensation Law, a person in such a dual capacity is not to be considered an employee within the meaning of the Act, and is not entitled to recover workmen's compensation."

Appellant cites the following cases (among others) in support of such contention: Berger v. Fidelity Union Casualty Co., Tex.Civ.App., 293 S.W. 235 (no writ hist.); Southern Surety Co. v. Inabnit, Tex.Com.App., 119 Tex. 67, 24 S.W.2d 375; Wade v. Superior Ins. Co., Tex.Civ.App., 244 S.W.2d 893, W/E Ref.

Appellee levels the following counterpoint to appellant's contention 1:

"The Trial Court correctly ruled that appellee W. E. Kling was entitled to recover judgment on the grounds pleaded and proved by Kling, including Workmen's Compensation Insurance contract, special contract of accident or indemnity insurance, estoppel, waiver, fraud, negligence, mutual mistake and reformation of the contract."

The record before us reflects that appellee Kling took over the work at the Kosse gin in 1946, when his father and M. A. Gunter were co-partners in the ownership of the gin. Kling did everything at the gin; repaired machinery, maintenance, bookkeeping, and operated the gin during the gin season. He was the only year-round employee; other employees were on a seasonal basis. Neither his father nor M. A. Gunter were active in the business. In 1949 appellee's mother died and in 1955 his father died. He left no will and there was no administration on his estate. He left nine children, including appellee. Since 1950 Kling and Gunter Gin bought all its workmen's compensation insurance through Mr. A. L. Moss, who had an insurance agency in Kosse. Appellee Kling was paid wages of $72 per week by the gin company for 1957. On 9 August, W. K. Jarrett, special agent of appellant Insurance Company, made a trip to Kosse and contacted A. L. Moss of the Moss Insurance Agency. Moss and Jarrett went to the gin to sell the gin workmen's compensation insurance. Jarrett knew the company was known as C. J. Kling Estate and M. A. Gunter Gin Company. He knew C. J. Kling was dead and that appellee was his son. Jarrett filled out an application for compensation insurance on the gin and in his own hand wrote thereon: *"W. E. Kling (Manager, son of C. J. Kling) There is to be coverage on him."* The application stated that C. J. Kling was dead. Jarrett, appellant Company's Special Home Office Agent and representative, testified that Kling said he wanted and understood there was to be coverage on him, and that the application stated that coverage was to be on appellee. Jarrett knew all of the facts of the situation. The policy was issued and Jarrett said the company had *"accepted the application."* The policy was written and countersigned by Moss as local Recording Agent, who knew all of the facts, family history, etc., involved in the instant case. Moss testified he understood the policy covered W. E. Kling. With Jarrett and Moss (Special Representative and Local Recording Agent) for the Insurance Company knowing all of the facts, the company received the application which stated there was to be coverage on W. E. Kling, then advised Moss the policy had been approved and sent same to Moss, who countersigned same and delivered it to the Gin Company, and collected the premium in the amount of $381.40. This policy was in effect when Kling was injured.

It is our view that the Insurance Company is guilty of fraud in accepting the insurance premium, based on coverage for Kling, issuing the policy with knowledge of the facts of ownership, assuring Kling he had coverage, writing such on the application, and then denying liability after Kling was injured. This is legal fraud for which the Insurance Company must pay Kling for his injuries as provided under the Workmen's Compensation Law.

Our Supreme Court, in Liverpool & London & Globe Ins. Co. v. Ende, 65 Tex. 118, expresses the rule thusly:

"The inquiry arises whether, under the facts shown, the appellant is estopped to deny the validity of the policy * * *.

"The rule which seems to us the true one is thus stated: 'To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as ground of avoidance, is to attempt a fraud. This the courts will neither aid nor presume, and when the alternative is to find this or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter. Such an issue is tantamount to an assertion that the policy is valid at the time of delivery, and is a waiver of the known ground of invalidity.' * * *

"The insurer is estopped from setting up the breach of any condition of the policy when at the time of its issue it knew that the condition was inconsis-

tent with the facts, and the assured has been guilty of no fraud. * * *. When the insurer issues a policy to the assured without any written application, containing conditions inconsistent with the risk * * * it is estopped from setting up a breach of such conditions in defense to an action upon the policy."

(The case at bar is much stronger against the Insurance Company since their agent, knowing all the facts, wrote upon the application that there is to be coverage on appellee.)

The case of Liverpool & London & Globe Ins. Co. v. Lester, Tex.Civ.App., 176 S.W. 602, W/E Ref., holds that it is fraud for an insurance company to issue a policy with knowledge of facts which are grounds for invalidity, and after accepting premiums refuse to recognize the policy. To the same effect is Lee v. Mutual Protective Ass'n, Tex.Civ.App., 47 S.W.2d 402, W/E Dism'd.

■ It is our further view that since Jarrett and Moss had knowledge of all the facts; then represented to Kling he had coverage; who along with the Gin Company relied thereon; and accepted the premium in consideration of the issuance of the policy; that the Insurance Company is estopped to deny liability to Kling.

In Shear Company v. Wilson, Tex.Com. App., 294 S.W. 843, the court says:

"Estoppel is always predicated upon the conception that one pleading it has been misled to his prejudice by some statement, act, or conduct of another who thereafter seeks to assert a right inconsistent with such statement, act, or conduct."

See also Farmers Mutual Ins. Ass'n of Erath County v. Gilbreath, Tex.Civ.App., 270 S.W.2d 696, W/E Ref. NRE.

Kling was misled to his prejudice by the statement of Jarrett and Moss that he had insurance coverage. Superior Insurance Company accepted the premium (and has never returned same), based on coverage for Kling, and after he has been injured, says it was mistaken and that he did not have coverage.

We further think that the appellant Insurance Company, under the factual situation before us, waived any defense it had to the policy. They had knowledge of all the facts they now assert as defenses, accepted premiums based on payment to Kling of $4,000 a year wages out of a total of $6,000 total gin payroll; expressly agreed with Kling and the gin that he would have insurance coverage.

Our Supreme Court, in Equitable Life Assurance Society v. Ellis, 105 Tex. 526, 147 S.W. 1152, 1156, says:

"While it is a maxim that forfeitures are odious, the law is not eager to relieve against them; it takes no initiative; and in itself presents no remedy against the contract the parties have themselves made. *But it is not, and should not be, slow to give effect to conduct reasonably indicative* of an intention to forego the advantage of a forfeiture and relinquish its result.

"Hence the holding that it will seize upon slight circumstances as evidence of such intention, and the further settled rule that in our opinion controls this case that a *waiver* of the forfeiture of a policy of insurance will result, in the absence of any agreement to that effect from negotiations or transactions with the insured after knowledge or the forfeiture by which the insurer recognizes the continued validity of the policy or does acts based thereon."

To the same effect is Continental Insurance Co. v. Cummings, 98 Tex. 115, 81 S.W. 705, and Home Insurance Co. of New York v. Roberts, Tex.Com.App., opinion adopted 129 Tex. 178, 100 S.W.2d 91.

■ Again we reiterate, the appellant Insurance Company had knowledge of all

the facts. They knew that Kling was an owner of some small percentile of the gin, but nonetheless, accepted the application for the policy, writing thereon that Kling was to be covered, *accepted and kept* the premium. We think these facts give rise to a special contract of insurance upon Kling. Appellant is a stock company and is authorized to write indemnity and accident insurance. See McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679, Hartford Accident & Indemnity Co. v. Morris, Tex.Civ.App., 233 S.W.2d 218, W/E Ref. NRE. The law at the time of the foregoing cases was to the effect that the Workmen's Compensation Law did not apply to cities. Cities nevertheless had been issued compensation policies on their employees. When the employees were injured the company denied liability. The Supreme Court, in the McCaleb case, supra, says [132 Tex. 65, 116 S.W.2d 682]:

"Nor can liability to an employee of a city who accepts insurance thereunder be defeated on the ground that such contract is illegal or ultra vires as to the city. The insurer is estopped from denying the validity of the contract as to the employee where it collects and retains premiums thereon * * *

* * * * * *

"* * * If the insurance company saw fit to execute a policy to the city as an accident group policy, for the benefit of its employees * * * and accepted premiums therefor, the company cannot question the validity of such contract * * *

"The language used in the main policy * * * shows that it was the real intention of the insurance company to insure the employees of the city against accidental injury sustained while in the course of their employment; *and it is the duty of the courts to construe liberally such policy, so as to effectuate the purposes for which it was issued, and so as to uphold,* *rather than defeat, the purposes expressed therein * * *"*.

■ Moreover, we think that the appellant Insurance Company was negligent under the factual situation before us in not advising appellee he was not covered, and for such negligence appellant Insurance Company is liable in tort for the amounts of coverage set up in the Workmen's Compensation Law.

■ Appellant contends that, if the appellant Insurance Company had informed appellee that he did not have coverage he would not have obtained workmen's compensation coverage under any other policy or with any other company, since the Workmen's Compensation Law would apply to any other compensation carrier and its policies also. This contention is invalid because certainly appellee and/or the Gin Company could have obtained an accident and indemnity policy on appellee, and undoubtedly would have done so had appellant advised that it held that no coverage was provided under its policy. Had appellant company advised that it held that no coverage was provided under its policy it would have had to refund $2/3$ of the premium which it had received and appellee and/or the Gin Company would have at least had the opportunity to attempt to obtain accident indemnity coverage on appellee.

■ Moreover, if the policy does not cover appellee, such was the result of a mutual mistake of fact and appellee is entitled to have the policy reformed so as to provide coverage.

■ It is our view that under the factual situation before us, where the insurer acquires full knowledge of facts sufficient to work a forfeiture of its policy, or to render same inoperative, and it does not cancel the policy, but retains the unearned premium, it waives the discrepancy, and is estopped to claim a forfeiture of the matter rendering same inoperative. It

**158**

is equally well settled that a provision in the policy is ineffectual to prevent a parol waiver thereof by an authorized agent acting within the scope of his authority. See American Fire & Casualty Co. v. Eastham, 5 Cir., 185 F.2d 729, 730, and cases therein collated.

■ Finally it is our view that under the undisputed factual situation before us, the interest of appellee in the Gin Company being so very small (only ⅛s), that such small interest should constitute an exception to the Texas view that a partner cannot likewise be an employee. In this connection there is respectable authority which construes workmen's compensation statutes to the effect that a partner, when working for the partnership as an employee, is and should be covered by the Act. See Ohio Drilling Co. v. State Industrial Commission, 86 Okl. 139, 207 P. 314, 25 A.L.R. 367.

Appellant's Point 1 is overruled.

■ Appellant's 2nd and 3rd contentions are to the effect that appellee's compensation and injury should be limited to loss of the left arm; and that the award of total and permanent disability is against the great weight of the evidence.

We have carefully reviewed the record before us and conclude that the evidence is sufficient to sustain the Trial Court's finding of total and permanent disability. The appellee and two doctors testified to facts which sustain the finding and judgment of the Trial Court. The record is ample to sustain the Trial Court. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Further, the Act should be liberally construed in favor of the injured workman. Texas Employers Ins. Ass'n v. Andrews, 130 Tex. 502, 110 S.W.2d 49; Maryland Casualty Co. v. Hendrick Memorial Hospital, 141 Tex. 23, 169 S.W.2d 969; American Mut. Liability Ins. Co. v. Parker, 144 Tex. 453, 191 S.W.2d 844. A liberal interpretation will award him the greatest benefits the nature of his injuries will sustain. Hargrove v. Trinity Universal Ins. Co., 152

Tex. 243, 256 S.W.2d 73; Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575; Commercial Standard Ins. Co. v. Villa, Tex.Civ.App., 313 S.W.2d 627, W/E Ref. NRE.

Appellant's Points 2 and 3 are overruled.

It follows that the judgment of the Trial Court is affirmed.